UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>RA'SONNE AMEALO BELL, et al.,<br><br>Defendants. | Criminal No. 16-0005-09 (JDB) |

**MEMORANDUM OPINION & ORDER**

**I.   INTRODUCTION**

In a superseding indictment, defendant Robert Apperson, along with eight co-conspirators, has been indicted for distributing heroin and cocaine in violation of 21 U.S.C. § 841. At the center of the alleged conspiracy is Ra'Sonne Amealo Bell, who purchased heroin and cocaine from Richard Jamal Solomon, a drug supplier in New York, and then distributed the narcotics to alleged co-conspirators in the Washington, D.C.-area, including Apperson. The Government's investigation of this conspiracy reached its climax on January 7, 2016, when Bell and another defendant were arrested in Philadelphia with approximately two kilograms of suspected cocaine and approximately 300 grams of suspected heroin. Phone calls and text messages between Bell and a co-conspirator, as well as testimony from another witness, indicate that Apperson acted as a distributor in the Culpeper, Virginia, area for Bell's narcotics.

The Government moved that Apperson be detained prior to trial pursuant to the Bail Reform Act, 18 U.S.C. § 3142(e), and filed a supporting memorandum. Gov't's Mot. for Detention [ECF No. 90]. At the detention hearing on September 15, 2016, Apperson's counsel orally requested that Apperson be released on bond and placed in the High Intensity Supervision

1

Program (HISP), pursuant to 18 U.S.C. § 3142(c). The Pretrial Services Agency confirmed that Apperson is eligible for HISP. After careful review of the proffered facts and the law, the Court will grant the Government's motion and order that defendant Apperson be detained without bond pending trial. See 18 U.S.C. § 3142(e).

## II.     LEGAL STANDARD

The Bail Reform Act aims to provide "fair bail procedures while protecting the safety of the public and assuring the appearance at trial of defendants found likely to flee." United States v. Montalvo-Murillo, 495 U.S. 711, 720 (1990). The Court must order that a defendant be detained prior to trial if, after a detention hearing, the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). When making that determination, the Court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. Id. § 3142(g).

Under the statute, detention must be supported by clear and convincing evidence when justified based on the defendant's danger to the community, and must be supported by a preponderance of the evidence when justified based on the defendant's risk of flight. United States v. Simpkins, 826 F.2d 94, 96 (D.C. Cir. 1987); 18 U.S.C. § 3142(f). When the defendant is charged with an offense under the Controlled Substances Act that is punishable by more than 10

years' imprisonment—which Apperson is—then the statute contains a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community." See 18 U.S.C. § 3142(e)(3), (e)(3)(A). For this presumption to apply, the Court must have probable cause to believe that the defendant committed the offense. Id. § 3142(e)(3). However, the indictment itself may establish that probable cause. United States v. Smith, 79 F.3d 1208, 1209 (D.C. Cir. 1996) (per curiam). Even when the presumption applies, the Court must still weigh the evidence and make the ultimate determination. See United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991) ("When a defendant produces such evidence, however, the presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight") (internal citations omitted); United States v. Muschetta, 118 F. Supp. 3d 340, 344 (D.D.C. 2015).

## III.   DISCUSSION

The rebuttable presumption applies here. Apperson is charged with conspiring to distribute one kilogram of heroin and five kilograms of cocaine in violation of the Controlled Substances Act, a felony that is punishable by a maximum term of more than 10 years' imprisonment. See 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i)–( ii). The indictment provides probable cause for the Court to believe that Apperson committed the charged offenses, for the purposes of triggering the presumption.

Apperson's alleged role in the conspiracy was to distribute narcotics in Culpeper, Virginia, along with his partner, Rodney Simms. Gov't's Mot. for Detention [ECF No. 90] ¶ 23. According to the Government, Apperson and Simms pooled their money to purchase bulk quantities of heroin and cocaine from Bell for distribution in the Culpeper neighborhood. Id. The Government provides numerous text messages and phone conversations between Bell and

Simms regarding purchasing and distributing the narcotics. Id. ¶¶ 24–29. Some of Simms's messages and conversations referred to a third-party, sometimes described as Simms's nephew. Id. The messages and conversations recount that this third party owed Bell money in exchange for narcotics that Bell had supplied, id. ¶¶ 27–29, and that the third party had a distribution network that could convert cocaine into crack cocaine, id. ¶ 24. The Government proffered during the hearing that it has evidence that Apperson is the third party to whom Simms refers. According to the Government, law enforcement officers also observed Apperson driving Simms to a meeting with Bell. Id. ¶ 30. Additionally, the Government proffered that Apperson has continued distributing narcotics to Claire Stinnett for her personal use and for distribution, even after Bell, Simms, and other co-conspirators were arrested. Id. ¶ 31. Stinnett has provided a statement to law enforcement officers corroborating that Apperson supplied her with cocaine and heroin for her use and for distribution to approximately 100 people. Id. ¶ 33. The Government has also conducted controlled purchases of cocaine from Apperson in the Culpeper area. Id. ¶ 34.

Based on this proffered evidence, the Government argues that Apperson presents a significant flight risk. The Government proffered that he has significant cash on hand from his illegal drug dealing, as demonstrated by the fact that he recently purchased a luxury car paying $16,200 in cash, mostly one-hundred dollar bills, and noted that he would pay the rest of the loan within two months. Further, the government argued that the nature of his role as a drug distributor means he has significant contacts outside of this area, allowing him to flee easily. See United States v. Alatishe, 768 F.2d 364, 370 n.13 (D.C. Cir. 1985) (the "lucrative nature of drug trafficking, and the fact that drug traffickers often have established substantial ties outside the United States" indicates a high risk of flight (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 20 (1983), U.S. Code Cong. & Admin. News 1984, p. 3203)). The Government also proffered

evidence that Apperson helped Stinnett attempt to flee from a drug-treatment center to avoid facing prosecution for her own alleged drug distribution. Gov't's Mot. for Detention [ECF No. 90] ¶ 35.

In response, Apperson points to his significant community ties. At his detention hearing, Apperson indicated that he has never owned a passport or traveled out of the country, that his entire family lives in Culpeper, Virginia, and provides him with a strong support network there, and that he owns a business in Virginia. Apperson presented several letters from members of his community and his church indicating that he has strong community ties and therefore does not present a significant flight risk. He also lives with his minor son and girlfriend, and is therefore unlikely to leave them. Apperson proffered no evidence, however, in response to the Government's presentation regarding the offense conduct.

The Government also argues that Apperson presents a significant danger to members of the community through his distribution of heroin and cocaine. Stinnett has provided evidence to the Government that Apperson regularly provided her with heroin for her personal use and cocaine for distribution in the Culpeper area. Id. Indeed, the Government states, Stinnett was foiled in her own attempt to flee—which was aided by Apperson—because she was discovered having overdosed on narcotics that were supplied by Apperson. Id. Given the "significant risk of pretrial recidivism" for defendants who are accused of "distributing dangerous drugs," the government argues that no conditions of release can mitigate the risk of danger to the community. Alatishe, 768 F.2d at 370 n.13 (internal quotation marks and citation omitted).

**IV.    SECTION 3142(G) FINDINGS**

Upon consideration of the factors enumerated in section 3142(g) of the Bail Reform Act, the Court finds by clear and convincing evidence that Apperson poses a risk of safety to the community and that no conditions of release would reasonable protect against that risk.

To begin with, the nature and circumstances of the charged offense are that the defendant participated in a conspiracy involving distribution of narcotics. The offense is serious, involves a significant quantity of drugs, and warrants a correspondingly significant sentence if convicted, and therefore favors detention. See 18 U.S.C. § 3142(e)(3); Alatishe, 768 F.2d at 370 n.13; United States v. Sheffield, 799 F. Supp. 2d 18, 21 (D.D.C. 2011).

Moreover, the Court finds the weight of the evidence against Apperson compelling. Although the text messages and phone conversations between Bell and Simms never use Apperson's name, the Government proffers that it will provide evidence at trial that Apperson is the third party they reference, and there is no counteracting evidence. The Government's evidence that Apperson drove Simms to a meeting with Bell, combined with the intercepted communications between Simms and Bell, strongly indicates Apperson's connection with the conspiracy. And the controlled purchases from Apperson, together with the evidence that Apperson provided Stinnett with drugs for personal use and distribution, supports the conclusion that Apperson presents a serious danger to the community through his continued distribution of illegal narcotics.

Furthermore, the Court finds that Apperson's personal characteristics provide some support both for detention and for release on bond. Apperson has strong ties to the community, as demonstrated by his family's presence in the courtroom and the letters from his pastor, his son, and members of his church. On the other hand, he also has several past criminal convictions,

including for drug possession, carrying a concealed weapon, disorderly conduct, and reckless driving.

Finally, the Court finds that the nature of Apperson's alleged crimes is inherently dangerous. It is well recognized that drug trafficking presents a danger to the community. See Alatishe, 768 F.2d at 370 n.13; see also United States v. Strong, 775 F.2d 504, 507 (3d Cir. 1985); United States v. Lorenzana-Cordon, No. CR 03-331-13 (CKK), 2015 WL 5011445, at *3 (D.D.C. Aug. 24, 2015). The Court therefore concludes that there are no conditions this Court can fashion that would reasonably ensure the safety of the community if Apperson is not detained pending trial. Because the Court decides on the basis of community safety, it does not reach the issue of Apperson's risk of flight.[1]

## V. CONCLUSION

For the foregoing reasons, the Government's motion for detention prior to trial is GRANTED; in accordance with 18 U.S.C. §§ 3142(e)(1) and 3142(i), the Court ORDERS that Apperson be detained without bond and that he remain in the custody of the Attorney General for confinement pending trial.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: September 19, 2016

---

[1] But Apperson's conduct in assisting Stinnett to flee in an attempt to avoid prosecution is quite serious. And defense counsel's excuse that "his heart" led Apperson astray is, quite frankly, of little moment.